# Phillipsburg Horse Car Co. *v.* Fidelity & Casualty Co., Appellant.

*Insurance—Liability policy—Street railways—Risks.*

An insurance company insured a street railway company from liability for damages on account of injuries "resulting from any and every accident to or caused by the horses, cars, plant, ways, works, machinery or appliances used in the business of the insured and described in the application." The street car company was obliged to pay damages for personal injuries to a passenger sustained by the upsetting of a large omnibus sleigh, which was used in place of a car while the tracks were obstructed by snow and ice. The testimony showed that such sleighs were at times used by street railway companies in the section of country in which the plaintiff's road was operated, but did not show that the custom was so general that the parties would be presumed to have taken it into consideration in entering into a contract. *Held*, that the insurance company was not liable for the loss.

Argued March 8, 1894.  Appeal, No. 392, Jan. T., 1894, by defendant, from judgment of C. P. Northampton Co., Dec. T., 1893, No. 65, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.  Reversed.

Assumpsit on insurance policy.  Before REEDER, J.

At the trial, it appeared that the plaintiff, a horse car company, applied to defendant, an insurance company, for a policy of insurance against damages resulting from the death or injuries of passengers or other persons, except employees, by reason of the operation of plaintiff's street railway.

The application for insurance was as follows:

## "THE APPLICATION.

Premiums,

" Easton Transit Co. of Easton, Pa. . . . . . $16,000—$240
   Phillipsburg Horse Car Co. of Phillipsburg, N. J. $7,000—$105
      " Application for street railroad liability policy.

" Estimated Gross,       } $16,000 Easton Transit Co.
  Annual Traffic Earnings,   }    7,000 Phillipsburg Horse Car Co.
  Policy No. . . .   Rate, 1½.
  Home Office No.  .  Term, 1 year.  Premium  .   $345
  Renewal No. . . .      Limit of Liability { $ 1,500 / $10,000

" To the Fidelity and Casualty Company of New York:

" Application is hereby made to The Fidelity and Casualty Company for a Liability Policy of Insurance for Street Railroads, covering employees, passengers and the public in general, to be based on the following statement of facts, which are to be considered as warranties:

" 1. Corporate name of Assured—Easton Transit Co. & Phillipsburg Horse Car Co.

" 2. General offices of Assured—Easton, Pa.

" 3. Motive power of road—Horse power.

" 4. Number of miles operated—About five miles, 3 miles Easton Transit Co., 2 miles Phillipsburg Horse Car Co.

" 5. Does the line cross any steam R. R. on the same level? Yes.  Penna. R. R. by the Phillipsburg Horse Car Co.

" 6. Is the track single or double?  Single.

" 7. Number of cars in use—5 on Easton Transit Co., 4 on Phillipsburg Horse Car Co.

" 8. Average number of trips per day each—14 trips Easton Transit, 15 trips Phillipsburg Car Co.

" 9. Car run at what headway—6 miles an hour.

" 10. Schedule time making trip one way—30 minutes.

" 11. Is each car supplied with conductor ?—On Easton Transit Co., not on the other.

" 12. If electric road, state what system—

" 13. If horse road, give number of horses per car—one horse to Phillipsburg Horse Car Co. cars, two horses to Easton Transit Co. cars.

" 14. ·There is no information tending to vary this risk, except as herein stated—No.

" The employees.

" Easton Transit Co.

| Number. | Description of occupation. | Average annual wages. | Places at which workmen to whom wages paid are employed. | Remarks. |
|---|---|---|---|---|
| 4 | Stableman, | 375 | At stables. | |
| 5 | Conductors, | 400 | On cars. | |
| 5 | Drivers, | ·325 · | On cars. | |
| 4 | Hill boys, | 175 | On road. | |
| 1 | Watchman, | 350 | At stable. | |
| 1 | Lineman, | 475 | General work. | |
| " Phillipsburg Horse Car Co. | | | | |
| 1 | Stableman, | 480 | At stable. | |
| 4 | Drivers & Conds. | 490 | On cars. | |
| 1 | Supt, | 600 | | |

" This insurance is based on an estimated amount of annual gross earnings from traffic of $16,000 Easton Transit Co., $7,000 Phillipsburg Horse Car Co.

" The estimate should be sufficient to cover for the period of twelve months. If the estimate is in excess of the actual earnings, an allowance will be made pro rata upon the renewal of the risk. If the estimate is too low, the assured will pay to the company an additional premium, sufficient to carry the risk for the year.

" The risk commences at noon, this 26th day of July, 1892.

" Agent, N. H. MESSENGER. Signed, A. D. CHIDSEY, Sec."

The material provisions of the policy were as follows :

" Common Carrier's Liability Policy.

" In consideration of the warranties made in the application for this policy, and of one hundred and five dollars, The Fidelity & Casualty Co. of New York, hereinafter called the company,

" Does hereby insure Phillipsburg Horse Car Co. of Phillipsburg, in the county of ———, and state of New Jersey, hereinafter called the assured, for the term of twelve months, beginning on the 26th day of July, 1892, at twelve o'clock noon, and ending on the 26th day of July, 1893, at twelve o'clock noon, standard time.

" 1. Against all liability for damages on account of fatal or non-fatal injuries suffered by any person or persons, other than employees of the assured, resulting from any and every accident to or caused by the cars, horses, plants, ways, works, machinery or appliances used in the business of the assured, and described in the application herefor, which is hereby made a part of this policy.

" 2. The company's liability for a casualty resulting in injuries to or the death of one person is limited to five thousand dollars ($5,000) ; and, subject to the same limit for each person, its gross liability for a casualty resulting in injuries to or the death of several persons is ten thousand dollars. "

" 6. The employment of any person under twenty-one years of age by the insured shall render this policy void so far as a claim under it may arise by any accident which comes about through any such person, and the same shall apply to claims arising through the tortious acts of any of the insured's employees.   Nor shall the company be liable for any injuries which may happen because of an invasion, insurrection, riot or civil commotion, or any military or usurping power, nor for any damages caused by the explosion of any steam boiler or boilers, or by fire."

" 10. This policy shall continue during the period stated in it, the estimated traffic earnings being the basis for the premium charge for the period stated.   If the amount of gross annual traffic earnings exceeds the amount stated in the policy, the insured shall pay the company an additional premium, calculated on such additional gross traffic earnings received, at the rate of the premium stated in this policy.   If the estimated amount of the gross annual traffic earnings shall not have been received within the period of this insurance, a proper proportion of the premium paid shall be allowed on the next renewal of the policy.

" 11. The company's officers shall have the right at all rea-

sonable times to inspect the books of the assured so far as they relate to traffic earnings, and also to inspect the cars, horses, plants, ways, works, machinery and appliances used in his business."

Plaintiff was obliged to pay two thousand and seventy dollars ($2,070) to Elizabeth Price for damages for personal injuries received by her from the upsetting of a large omnibus sleigh in which she was a passenger.

Plaintiff showed, under objection and exception, that in the neighboring towns of Easton and Allentown sleighs were used when tracks were obstructed by snow and ice. The admission of this evidence was assigned for error. Defendant's evidence tended to show that sleighs were not used in the city of New York, or generally in the United States, and that tracks were cleared by snow plows, or were swept.

Defendant's point was among others as follows:

" 6. Under all the evidence in the case the verdict must be for the defendant. *Answer:* I deny this point because of my direction that, under all the evidence, the verdict must be for the plaintiff." [8]

Verdict and judgment for plaintiff for $2,103.81.

*Error assigned* was among others (8) instruction, quoting it.

*W. S. Kirkpatrick,* for appellant.—The accident for which indemnity was claimed was not within the terms or scope of the policy: Parish v. Wheeler, 22 N. Y. 494.

When the policy is specific as to the subject-matter of the risk it cannot be extended by implication, nor is evidence admissible to show that the parties intended to have it cover matters not specified: Wood on Fire Insurance, 2d ed. 137.

All conditions involving forfeitures as well as exemptions are to be construed strictly against the insurer and most favorably to the insured. Yet the language of the contract is to be construed as a whole, is to receive a reasonable interpretation, and the risk is not to be extended beyond what is fairly within the terms of the policy: Duran v. Ins. Co., 63 Vt. 437 ; 25 Am. St. R. 774; Wood, Fire Ins., 2d ed. 137, 179; Hare v. Barstow, 8 Jur. 928 ; Leibenstein v. Ins. Co., 45 Ill. 303 ; Joel v. Harvey, 5 W. R. 488; Ins. Co. v. Updegraff, 40 Pa. 311; Ins. Co. v. Arthur, 30 Pa. 315; Ins. Co. v. Lenheim, 89 Pa. 497.

So clear is it that a sleigh is not a street car, and involves very different elements of danger and risk, that the court, upon plaintiff's own showing, should have instructed the jury that there was a breach of the warranties which were the considerations for the policy: Rickards, Ins. § 52; 1 Biddle, Ins. §§ 543, 557; Day v. Ins. Co., 52 Me. 60; Ins. Co. v. Horan, 89 Pa. 438; Ins. Co. v. Arthur, 30 Pa. 315; Ins. Co. v. Huntzinger, 98 Pa. 41.

Usage and custom cannot be proven to contravene a rule of law nor to alter or contradict the express or implied terms of a contract free from ambiguity, nor to make the legal rights and liabilities of the parties to a compact other than they are by the terms of the contract: Hopper v. Sage, 112 N. Y. 530; 8 Am. St. R. 771; Hartman v. Ins. Co., 21 Pa. 466; Ins. Co. v. Gruver, 100 Pa. 266; Rogers, Exp. Test., 2d ed. 245–254.

*H. J. Steele, Russell C. Stewart* with him, for appellee.—The policy must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to procure. When the words are without violence susceptible of two interpretations, that which will sustain the claim and cover the loss must in preference be adopted: May, Ins. § 175; Ins. Co. v. Cropper, 32 Pa. 351; Burkhard v. Ins. Co., 102 Pa. 262; Humphreys v. Ins. Co., 139 Pa. 264; Wood, Fire Ins. § 150; Ib., p. 145; Western & Atlantic Pipe Line v. Ins. Co., 145 Pa. 346; Phila. Tool Co. v. Ins. Co., 132 Pa. 236; Bole v. Ins. Co., 159 Pa. 53.

The true rule with reference to what constitutes such false statements as will constitute a breach of warranty in a policy of insurance is contained in the following cases: Dilleber v. Ins. Co., 69 N. Y. 256; Ins. Co. v. Grube, 6 Minn. 82; May, Ins. § 166; Liberty Hall Assn. v. Ins. Co., 7 Gray, 261; Meyers v. Ins. Co., 156 Pa. 420; Ins. Co. v. Gruver, 100 Pa. 267; Ins. Co. v. Losch, 109 Pa. 100; Rife v. Ins. Co., 115 Pa. 530; McKee v. Ins. Co., 135 Pa. 544; Ins. Co. v. Miller, 120 Pa. 504.

We introduced testimony to show, first, the general custom among street railway companies to use sleighs temporarily when their tracks were covered with snow and ice, and, secondly, to show that this use was so notorious in this section of the coun-

try that the insurance company must be presumed to have had knowledge: Mooney v. Ins. Co., 138 Mass. 375; Whitmarsh v. Ins. Co., 16 Gray, 361; Ins. Co. v. McLaughlin, 53 Pa. 485; Wood, Ins. § 530, p. 1177; Ins. Co. v. Gruver, 100 Pa. 267.

OPINION BY MR. JUSTICE FELL, March 19, 1894:

The policy of insurance upon which this action is founded was issued by the defendant to the Phillipsburg Horse Car Co., the plaintiff, upon an application in writing in which the insured set out the number of miles of road operated, the number of cars and horses in use, the number of trips per day, the schedule time and other matters intended to give the fullest information to the insurer of the character and extent of the risk, and ended with the statement: " There is no information tending to vary the risk except as herein stated."

The insurance was " against all liability for damages for or on account of fatal or non-fatal injuries suffered by any person or persons, other than employees of the insured, resulting from any and every accident to or caused by the cars, horses, plants, ways, works, machinery or appurtenances used in the business of the insured and described in the application herefor, which is hereby made a part of the policy."

The plaintiff owned three large omnibus sleighs, which were used in place of cars whenever the tracks were obstructed by snow or ice. During some winters they were used for a few days only, during others for weeks, and occasionally for months. They bore the name of the company, and were a part of its appliances for transportation. No mention of these was made in the application for insurance. The recovery against the car company was for injuries sustained by a passenger by the upsetting of one of these sleighs, and the only question we need now consider is whether the accident for which indemnity is claimed is within the terms of the contract.

The verdict could have been properly rendered, and can now be sustained, only upon the ground that the contract of insurance covered the use of other means of transportation than those mentioned in the application, and was against all risks incident to the general business of the company. The learned judge before whom the case was tried entertained this view, and in a charge in which the merit of clear and distinct statement is

conspicuous, instructed the jury that: " The words ' described in the application herefor,' limiting the liability of the company, do not apply to the machinery, appliances, plant, horses, cars, etc., described in the application of insurance, but they apply to the business of the insured ' described in the application herefor,' and therefore mean more than accidents, etc., occurring by the use of the property which is described in the application."

This view was based upon the construction of the contract and the fact, of which there was evidence, that sleighs were at times used by street railroad companies in conducting their business in the section of country in which the plaintiff's road was operated.

This view does not seem to us to be correct. The words of the policy limit the insurance to indemnity from liability for damages on account of injuries " resulting from any and every accident to or caused by the horses, cars, plant, ways, works, machinery or appliances used in the business of the insured and described in the application." The insurance is against accidents caused by certain things used in the business and described in the application, not things used in the business which is described in the application.

There was testimony that for some years the car company had used sleighs when its tracks were obstructed by snow or ice, and that their use was customary under the same circumstances in neighboring towns ; but it also appeared that the use of sleighs was restricted to that section of country, and that it was only one of the ways in common use of overcoming the difficulties caused by snow and ice. The testimony was far short of establishing a use so general that the parties would be presumed to have taken it into consideration in entering into a contract.

The plaintiff was incorporated as a horse car company, and as such had constructed and was operating a street railway by horse power. The use of any other vehicle than a horse car was not authorized by its charter, and could be justified only as a means of overcoming a temporary interruption of its operation resulting from an emergency. The policy by its terms was based upon statements made in the application, which were to be considered as warranties, and it was restricted to injuries

caused by or to certain enumerated ways, means and appliances used in the business and described in the application.

The defendants would not have been liable under the terms of the policy if the motive power had been changed by the use of steam or electricity instead of horses, and we are not able to see that the result is different when one kind of vehicle is substituted for another.

This is not the case of the temporary use of another means of transportation upon a part of the line made necessary by reason of the accidental destruction of cars, tracks or bridges, nor of the use of plows or sweepers to clear the track; but it was an entire abandonment during portions of the winter season of the use of the road as a horse railroad, and the substitution of a distinct and different mode of transportation. Whether the risk would be increased or diminished would depend upon the circumstances of the particular case, but it is evident that the risk in the use of sleighs differs from the risk in the use of cars. It includes the danger of upsetting, the chances of collision with other vehicles, the liability to loss of control of the horses—risks which are minimized in the use of street cars. The conditions from which accidents would probably result in the use of sleighs differ from those from which they are likely to happen in the use of cars; and whether the difference is great or small it is for the insurer to decide whether he will accept the risk.

We are therefore of opinion that the sixth point, asking for a peremptory instruction for the defendant, should have been affirmed; and as this sustains the eighth assignment of error it is unnecessary to notice the other assignments.

The judgment is reversed.